IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE, TENNESSEE

| | |
|---|---|
| WARNER/CHAPPELL MUSIC, INC., a Delaware Corporation, WARNER-TAMERLANE PUBLISHING CORP., a California corporation, WB MUSIC CORP., a California corporation, UNICHAPPELL MUSIC INC., a Delaware corporation, RIGHTSONG MUSIC, INC., a Delaware Corporation, and HOUSE OF GOLD MUSIC, INC., d/b/a "WARNER HOUSE OF MUSIC," a Delaware Corporation.<br><br>Plaintiffs,<br><br>vs.<br><br>BLUE MOON VENTURES, Inc., a Washington corporation, d/b/a "LOUDKARAOKE.COM", and EDWARD YIM, Individually.<br><br>Defendants. | Case No. 3:10-1160<br><br>Judge Campbell<br><br>Magistrate Judge Knowles<br><br>JURY DEMAND |

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendants rely upon three primary points in their Memorandum in Support of Defendants' Opposition to Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction ("Defendants' Response"). First, Defendants argue that Plaintiffs are unlikely to succeed on the merits of their claims. (Defendants' Response at 2). Second, Defendants argue that Plaintiffs have not shown irreparable harm. *Id*. Third, Defendants argue that an injunction is "unnecessary and abusive" because Defendants have already removed the karaoke CDGs from their website. *Id*. As set forth in greater detail below, Defendants' labyrinthine arguments are without merit on all points.

**A.      Plaintiffs are Likely to Succeed on the Merits of Their Claim For Direct Copyright Infringement.**

As a threshold matter, Defendants rely upon an incorrect standard of review. "At this initial stage, [the moving party] must offer some *prima facie* demonstration of the likelihood of its success on the merits from which the district court may weigh the four relevant factors to reach a decision." *Wilson v. Lexington-Fayette Urban County Gov't*, 201 F. App'x. 317, 324 (6th Cir. 2006). Defendants mistakenly argue that the standard for injunctive relief is more stringent in the Sixth Circuit. Defendants rely upon *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000), in which the Sixth Circuit Court stated in dicta that "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion, for example, and we therefore express no opinion as to the ultimate merits of the plaintiffs' case." In this regard, the Defendants confuse the standard to defeat the claim on the merits with the showing necessary to withstand an application for a preliminary injunction.

"The issue before the court in a motion for preliminary injunction is not whether the infringement has been conclusively established as a matter of law, but rather whether the evidence upon such a motion convinces the court that plaintiff will likely prevail at trial." *Princeton University Press v. Michigan Document Services, Inc.*, 1992 WL 436235 *2 (E.D. Mich. 1992). For the following reasons, the Plaintiffs have made a showing of likely success on their copyright infringement claims and, therefore, this Court should grant Plaintiffs' preliminary injunction.

A plaintiff in a copyright infringement suit must establish two elements: ownership and copying. *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Ellis v.*

*Diffie*, 177 F.3d 503, 506 (6th Cir. 1999). First, with respect to ownership, Defendants have presented no evidence contradicting Plaintiffs' sworn averment that they own/control the Subject Works in the percentages stated on the Exhibits "A" through "I" attached to the Verified Complaint for Injunction and Damages ("Complaint"). (Doc. No. 1, "Complaint", at ¶ 17). The exhibits to the Complaint not only identify the compositions, but also provide the percentage of Plaintiffs' ownership/control of the Subject Works and registration number for each copyright registration.

Concurrently herewith, Plaintiffs have filed the Declaration of Kelly L. Burnett, Director of Business and Legal Affairs at Warner/Chappell Music, Inc. Exhibit "A" to Ms. Burnett's Declaration is comprised of true and correct copies of the copyright registrations for the Subject Works identified in Exhibit 1 to this Reply, from the United States Copyright Office website, www.copyright.gov. Exhibit "B" to Ms. Burnett's Declaration is comprised of true and correct copies of the "Copyright Ownership & Collection Inquiry" documents, commonly referred to as "split sheets," which detail the ownership/control interests of the Plaintiffs for each work. Defendants have presented no evidence that the Plaintiffs do not own/control the Subject Works in the percentages stated on the Exhibits to the Complaint and documented in the regularly maintained business records of Plaintiffs.

While the Defendants argue that no copies of actual registrations have been filed in support of Plaintiffs' motion, this Court may take judicial notice of the contents of government

3

websites.[1] Federal Rule of Evidence 201 governs judicial notice of adjudicative facts. *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir.2002). Federal Rule of Evidence 201(b) provides:

> (b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Public records and government documents are generally considered "not to be subject to reasonable dispute." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999), overruled in part on other grounds)). This includes public records and government documents available from reliable sources on the Internet. *See, e.g.*, *Grimes v. Navigant Consulting, I*Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)(overruled in part on other grounds)*; Cali v. E. Coast Aviation Servs., Ltd.*, 178 F.Supp.2d 276, 287 (E.D.N.Y.2001) (taking judicial notice of documents from Pennsylvania state agencies and Federal Aviation Administration).

The United States Copyright Office maintains a website database, http://www.copyright.gov/records, from which the Defendants could easily verify the registration numbers listed on the Exhibits to the Complaint; Defendants simply refuse to do so. For these reasons, Plaintiffs respectfully request the Court take judicial notice of the fact of registration of the Subject Works.

Second, with respect to copying, Defendants do not claim that they had permission to exploit Plaintiffs' Subject Works in any way. The "Subject Works" is a defined term within the

---

[1] The actual registrations for the Subject Works amount to over 1,000 pages. Plaintiffs are prepared to file these documents upon the Court's direction.

Complaint that encompasses the musical compositions identified on Exhibits "A" through "I" of the Complaint.[2] Contrary to Defendants' arguments, Plaintiffs have established copying.

Plaintiffs allege in paragraph 19 of the Complaint that "Defendants and each of them have been participating in the reproduction, distribution, advertising, promotion and offering for sale for the purpose of inducing purchases of illegal and unauthorized copies of one or more of the subject works, in the form of 'karaoke' recordings." In their answer, Defendants simply deny that allegation.[3] However, their general denial in their Answer is contradicted by their Response which, on page 3, ***admits*** that "'sound clips' are available for listening (as opposed to downloading) for a small number of the songs that appear on the Loud Karaoke Website." Defendants also admit that they reproduced Plaintiffs' copyrighted works by taking the CDs "furnished by the manufacturer or distributor" and uploading those clips to its website. (*Id.*).

The act of uploading constitutes direct infringement. *See A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1014 (9th Cir. 2001)(uploading a copyrighted musical composition to a computer without permission constitutes direct infringement of that musical composition).

---

[2] Defendants argue that Plaintiffs have failed to identify any compositions owned by them that were included on six the brands of karaoke CDs named in paragraph 17 of the Complaint, namely: *Karaoke Klub, Magic Tracks, U-Best, Fiesta Karaoke, Backstage and Hot Stuff.* While none of the brands identified in paragraph 17 are contained on Exhibits "A"-"I" of the Complaint and are not part of the Subject Works, Defendants have identified an error in the Complaint. The foregoing described additional six brands were inadvertently included in the text of paragraph 17 through a transcription error. Since Defendants filed their response, Plaintiffs have filed a Motion Seeking Leave to Amend and a proposed Amended Verified Complaint removing any reference to any of these six brands.

[3] Federal Rule of Civil Procedure 8(b)(4) provides that '[a] party that intends in good faith to deny only part of an allegation <u>must admit the part that is true</u> and deny the rest." (Emphasis supplied). Thus, Defendants have specifically denied that they have offered for sale, advertised or promoted <u>any</u> of the compositions at issue.

5

Defendants are simply talking "out of both sides of their mouth" as the saying goes; *i.e.*, they are not "copying," but instead are merely making "sound clips...available for listening...on the Loud Karaoke website...." (Defendants' Response, p.3); they "...do not create any sound clips," but actually *re-create* them by loading them onto their website server from clips "...furnished by the [upstream] manufacturer or distributor...from which the clip[s] [are] taken." *Id.* Defendants' arguments are nothing more than nonsensical word games.

Plaintiffs have established the prima facie elements of direct copyright infringement.[4] *See White Consolidated Industries, Inc. v. Whirlpool Corp.*, 781 F.2d 1224, 1225 (6th Cir. 1986) (district court issued injunctive relief because of defendants' inability to overcome plaintiffs' prima facie case); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3rd Cir. 1983). Therefore, Plaintiffs are entitled to a preliminary injunction.

### **Distribution**

The owner of a musical composition copyright holds the exclusive right to control the distribution of the copyrighted material. 17 U.S.C. § 106(3). In this case, the distribution rights have not been licensed to Defendants to exploit.

Under the Copyright Act, a distribution occurs "by sale or other transfer of ownership, or by rental, lease, or lending." *Id.* In other words, the copyright owner has the exclusive right to publicly sell, give away, rent or lend any material embodiment of his work. *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62 (1st Cir. 2002); 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8.11[A] (2001).

---

[4] Defendants simply argue in a conclusory fashion that Plaintiffs will not prevail on their claims for willful infringement and that Plaintiffs cannot prove indirect infringement. In order to be entitled to an injunction, Plaintiffs need only establish a likelihood of success on any claim for copyright infringement.

6

In September and October of 2010, Defendants, though their interactive website www.LoudKaraoke.com, processed and sold an online order of infringing karaoke recordings to Franklin, Tennessee, resident Sam Sanchez. (*See* Declaration of Sam Sanchez ¶¶ 3-8). The packaging and return address of the infringing CDs was "Loudkaraoke.com WH", which implies that the location from which Defendants shipped product is actually their warehouse. (*Id.*)

Defendants' sale of karaoke packages containing performances of Plaintiffs' musical compositions and reproductions of the lyrics (both in print and as visual graphics) infringe Plaintiffs' distribution rights. (See Declaration of Paul Harrison Stacey, Doc. No. 5, at ¶ 4, Exhibit A). Defendants argue that, because they "do not maintain inventory of karaoke CDs" – that is, they do not physically/directly ship unauthorized karaoke products – "it is doubtful that Loud Karaoke, which, in the ordinary course of business, has neither possession nor title to the CDs that a consumer orders, is a 'distributor' of the CDs at issues." (Defendants' Memorandum at p. 12). This argument is without merit because an unauthorized "sale" violates the copyright owner's exclusive distribution right.

The Defendants reprise their disingenuous argument on the issue of unlawful distribution as well. They suggest that, because the delivery of the unlicensed recordings is made directly from one of several suppliers ("drop shipped"), that the Defendants themselves are not distributing the goods. Such an unfounded notion is belied by the fact that, for purposes of copyright infringement, conducting *sales* is the equivalent of *distribution infringement*.

Moreover, the shipping confirmation documents generated and provided by the Defendants to Sam Sanchez, who purchased infringing recordings of the Subject Works on several discs via the www.loudkaraoke.com website, from a location in the Middle District of

7

Tennessee, indicates that they purported to be shipped from the "LOUDKARAOKE.COM WH." The sender designation "WH" clearly signifies the Defendants' **w**are**h**ouse. The Defendants represent to the world, via their interactive internet website, that they advertised and offered for sale many brands of unlicensed karaoke recordings. When a visitor to the website is induced to purchase and placed an order, the goods are represented to be shipped from the loudkaraoke.com warehouse in Deerpark, New York. Now, when the Defendants are sued for their unlawful distribution activities, they have disowned the facility that they represented to be their warehouse in an effort to sanitize and distance themselves from their own well-documented copyright infringement. Whether, in fact, the Defendants actually possess a warehouse in Deerpark, New York, or have merely misrepresented some other facility to be their warehouse, does not change the fact that they controlled the solicitation, purchase, and authority to direct to shipment of the infringing goods from <u>some</u> facility. The nonsensical semantics argument that advertising, selling and directing the shipment of unlicensed recordings does not constitute "distribution," as that term is used within the context of the Copyright Act, is pure nonsense.

Section 106(3) of the Copyright Act explicitly grants to the copyright owner the exclusive right "to do and to authorize" the "sale" of any copies of the copyrighted work. *Cable/Home Communication Corp. v. Network Prods., Inc.,* 902 F.2d 829, 843 (11th Cir.1990). The Copyright Act further provides that "anyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright." 17 U.S.C. § 501(a). Thus, Defendants' sale of Plaintiffs' copyright work is an act of direct infringement.

Moreover, Plaintiffs' offering to sell unauthorized karaoke CDs embodying Plaintiffs' music compositions also violates Plaintiffs' distribution rights. In *Hotaling v. Church of Jesus*

8

*Christ of Latter-Day Saints*, the Fourth Circuit Court of Appeals held that "a library distributes a published work, within the meaning of the Copyright Act, when it places an unauthorized copy of the work in its collection, includes the copy in its catalog or index system, and makes the copy available to the public." 118 F.3d 199, 201 (4th Cir. 1997); *see A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001)(uploading "file names to the search index for others to copy violates plaintiffs' distribution rights"); *Universal City Studios Prods. LLLP v. Bigwood,* 441 F.Supp.2d 185, 190-91 (D. Me. 2006); *Motown Record Co. v. DePietro,* 2007 WL 576284, at *3 (E.D. Pa. 2007). Similar to the library in *Hotaling*, Defendants index and organize unauthorized copies of Plaintiffs' Subject Works and make them available to the public via the Internet.

At page 5 of Defendants' Response, Defendants also reproduce a chart that at least tacitly admits that discs manufactured by "*Legends,*" "*All Hits Karaoke Maxx Pack,*" "*Monster Hits,*" "*Music Maestro,*" "*Nutech,*" "*Panorama,*" "*Pop Hits Monthly,*" "*Top Hits Monthly*" and "*Chartbuster*" were available through The Loud Karaoke Website. **These are precisely the brands identified on Exhibits "A" through "I" to the Complaint.**

The third column of the chart identifies brands "Not Available Through Loud Karaoke Website," but no marking appears on the boxes underneath that column for the brands identified in this paragraph. **Thus, Defendants have admitted the very brands of unicensed discs were offered for sale and sold via their website.** Although footnote 3 of Defendants' Response argues that this is not "an admission" because the "information is based upon Defendants' initial review," Defendants cannot realistically expect not to be charged with knowledge of the products that appear for sale and distribution on their own website. This is just another instance of

9

Defendants' "double talk;" they admit, graphically no less, that they have been selling the unicensed recordings, then almost comically assert such an admission "shall not be construed as an admission." (Defendants' Response, p. 5, fn 3). They argue with certainty about matters which the Plaintiffs have gone on record as having been a typographical/transcription error in the Complaint, but feign cluelessness about the pointed, documented instances of infringement for which no error in description has been made. Such tactics do not even *rise* to the level of "frivolous," as that term is used in the context of Rule 11 of the Federal Rules of Civil Procedure.

In addition to the exhibits to Plaintiffs' Complaint, which reflect the availability of the unauthorized reproductions of Plaintiffs' Subject Works at the Loud Karaoke website, Exhibit 1 to this Reply evidences the detailed indexing and offering for sale of the unauthorized reproductions of Plaintiffs' Subject Works.

## **Reproduction**

The owner of a musical composition copyright holds the exclusive right to control the reproduction of that work. 17 U.S.C. § 106(1). Defendants do not have the right to reproduce Plaintiffs' copyrighted works.

As Defendants acknowledge, "[d]irect copyright infringement occurs when anyone" wrongfully "reproduces the copyrighted work in copies or phonorecords" and/or "distributes copies or phonorecords of the copyright work to the public by sale or other transfer of ownership, or by rental, lease, or lending". *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007)(quoting 17 U.S.C. § 501(a)).

On page 3 of Defendants' Response, Defendants admit that "'sound clips' are available for listening (as opposed to downloading) for a small number of the songs that appear on the

10

Loud Karaoke Website." Defendants also admit that they reproduced Plaintiffs' copyrighted works by taking the CDs "furnished by the manufacturer or distributor" and uploading those clips to its website. (*Id.*). The act of uploading constitutes direct infringement. *See A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1014 (9th Cir. 2001)(uploading a copyrighted musical composition to a computer without permission constitutes direct infringement of that musical composition). Defendants have admitted they have been "reproduc[ing] the copyrighted work in copies..." that take the form of recorded "clips" which they loaded onto their www.loudkaraoke.com server to advertise the unlicensed discs.

Exhibit 1 to this Reply is a representative collection of screen shots for the Loud Karaoke Website printed prior to the date of filing the Complaint. The "Listen Now" icon permits a visitor to the website to listen to a portion of those compositions where the icon appears, as Defendants concede. For example, page 3 of Exhibit 1 shows that Defendants offered a listening sample of an unauthorized reproduction of Plaintiffs' composition "It's a Mans, Mans, Mans World". On page 4 of Exhibit 1, Defendants offered a listening sample of an unauthorized reproduction of Plaintiffs' compositions "Stayin' Alive" and "Jive Talking". *See also* Exhibit 1, pgs. 27, 31). Thus, Plaintiffs have specifically proved direct infringement.

### Defendants' Reliance on Others

Defendants argue that Tenn. Code Ann. § 47-2-312 insulates them from liability for copyright infringement. That is an incorrect statement of the law. Whether Defendants are entitled to indemnification in the event they are found liable for copyright infringement for advertising, distributing and re-selling the unlicensed brand of karaoke recordings is not germane

11

to analyzing whether Plaintiffs are likely to succeed on establishing Defendants' liability for copyright infringement.

Any claim for indemnification against upstream suppliers would be futile because the Defendants are liable in their own right for direct copyright infringement based on their unlawful distribution of the unlicensed recordings. 17 U.S.C. § 106(3). Copyright infringement is a strict liability offense. *Toksvig v. Bruce Pub. Co.,* 181 F.2d 664, 666 (7th Cir.1950). The Defendants cannot avoid or negate the strict liability imposed by federal copyright law under the guise of a state law indemnification or UCC claim.

The Supremacy Clause of the United States Constitution, Article VI, Clause 2, "invalidates state laws that interfere with or are contrary to federal law." *Hillsborough County v. Automated Medical Labs, Inc.,* 471 U.S. 707, 712 (1985)

The Supremacy Clause states:

> "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

United States Constitution, Article VI, Clause 2.

Federal law preempts state or local law in three basic situations:

> a. Where Congress has expressly preempted state or local law ("express preemption");
>
> b. Where the scheme of federal regulation is so comprehensive as to make it a reasonable inference that Congress intended to occupy the field ("field preemption");
>
> c. Where Congress has not completely displaced state or local law, but there is an actual conflict between the federal and state or local

12

> law, the federal law prevails in two situations: (i) where the two schemes make it "a physical impossibility" to comply with both the federal and state/local regulations, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963), or (ii) because the state or local law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*See Hillsborough County v. Automated Medical Labs,Inc.,* 471 U.S.707, 712 (1985); citing, *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941). See generally *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698-699 (1984).

The Copyright Act does not expressly preempt state or local law; however, it *does* present a scheme of federal regulation that is so comprehensive as to create a reasonable inference that Congress intended a field preemption. The essential distinction between Federal Copyright law and state UCC claims is that copyright infringement is a *strict liability* tort:

> "Copyright infringement is a strict liability offense; Plaintiffs need not demonstrate Defendant's intent to infringe, or even knowledge of infringement, in order to prove copyright infringement. *See, e.g., Toksvig v. Bruce Pub. Co.,* 181 F.2d 664, 666 (7th Cir.1950) ("[i]ntention is immaterial if infringement appears"); *see also Chavez v. Arte Publico Press,* 204 F.3d 601, 607 (5th Cir.2000) ("Copyright infringement actions, like those for patent infringement, ordinarily require no showing of intent to infringe."); 14 A.L.R. Fed. 825, § 2 ("lack of intent to infringe or of knowledge of infringement does not relieve a 'direct' infringer of his liability for copyright infringement") (cited in *Monsanto Co. v. Potts,* No. 2:04-CV-282, 2005 WL 1514130 * 2 (S.D. Ohio June 24, 2005).)."

*Sony BMG Music Entertainment, et al. v. Willis.*, 2008 WL 2120837, page 3, (S.D. OH 2008)(copy attached).

Thus, the "good-faith-purchaser" element of state UCC laws has no place in the Federal scheme of copyright law. The strict-liability provisions of the Copyright Act are in such a degree of actual conflict with the state laws regarding equitable indemnification or, in the

13

alternative, UCC warranty-of-merchantability claims, that the state laws present an irreconcilable obstacle to (if not an affirmatively destructive legal scheme) to the effectuation of the purposes and objectives of Congress embodied the Copyright Act.

Simply put, Defendants who engage in the commercial exploitation of copyrighted recordings have an *affirmative duty* to verify that the recordings have been authorized by the copyright holders. *Buck v. Jewell-LaSalle Realty Co.*, 283 U.S. 191, 198 (1931).

If Defendants fail to verify such licensing/authorization, they do so at their own risk. *Id.*

The state law standard the Defendants offer to supplant the affirmative duties attending their strict liability obligations under federal copyright law is the notion of equitable indemnification, tortured into the unfounded assertion that they should be insulated from liability if they can show they are a mere "good faith purchaser" under state UCC law. Under the Supremacy Clause of the United States Constitution, the attempt by the Defendants to rewrite Federal copyright law is untenable.[5] As well, the Defendants could not conceivably be said to fall within the class of persons intended to be <u>protected</u> under the Copyright Act. (*See Northwest Airlines,* 451 U.S. at 91-92; *Ho-Chunk Nation v. J.C. Penney Co., Inc.,* 1999 WL 495899, at *4; *Mollfulleda v. Phillips,* 882 F.Supp. 689, 696 (N.D.Ill.1994)). Rather, they fall within the class of persons intended to be enjoined, subjected to *strict liability* and held to monetary damages remedies at the election of the copyright owners/plaintiffs.

---

[5] Similar claims for contribution under state law have been rejected by courts. *See, e.g., Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO,* 451 U.S. 77, 90-91 (1981); *Lehman Bros., Inc. v. Wu*, 294 F.Supp.2d 504, 504-05 (S.D.N.Y.2003); *Equity Builders and Contractors, Inc. v. Russell*, 406 F.Supp.2d 882, 886, 77 U.S.P.Q.2d 1442.).

## B. The Plaintiff Will Suffer Irreparable Harm Absent Issuance of a Preliminary Injunction.

Defendants argue that there is no risk that Plaintiffs will suffer irreparable harm if the injunction is not issued. However, irreparable harm exists because Plaintiffs are stripped of the right and power to control the use of their intellectual property, a loss that is difficult to quantify. *See Taylor Corp. v. Four Seasons Greetings, LLC,* 403 F.3d 958, 968 (8th Cir. 2005)(plaintiff "certainly has the right to control the use of its copyrighted materials, and irreparable harm inescapably flows from the denial of that right."); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1029 (9th Cir. 2001)(in the absence of injunctive relief, "plaintiffs would lose the power to control their intellectual property."); *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 552 (S.D.N.Y. 2008).

## C. An Injunction is Neither Unnecessary nor Abusive.

The need for injunctive relief is underscored by the Defendants' refusal to agree to notify their upstream suppliers and downstream commercial purchasers of the unlicensed discs at issue of the entry of an injunction and recall product from downstream commercial purchasers. (Warnock Declaration, ¶¶ 4,5). Fed. R. Civ. P. 65(d)(2)(C) provides that other persons who are in active concert or participation with the parties or their officers, agents, employees and attorney are also bound by a preliminary injunction. In the case of the <u>downstream commercial purchasers</u>, the refusal to recall an unlicensed disc constitutes a continuing course of *contributory infringement* by the Defendants, for which additional claims will continue to accrue. While the continued manufacturing/distribution of the unlicensed discs by the Defendants' <u>upstream suppliers</u> may not subject the Defendants to continuing liability, it does present a course of illegal copyright infringement that might well be eradicated once the manufacturers/suppliers are

15

put on notice that they could be held in contempt of Court for violating such an injunction, because non-parties are subject to the restraints of an injunction of which they have actual notice. Fed. R. Civ. P. 65(d)(2). By requiring such notice, future claims might be reduced and/or mitigated.

## CONCLUSION

Defendants should be enjoined from manufacturing, distributing, releasing, or otherwise exploiting any karaoke package containing compositions owned or administered by Plaintiffs, including the Subject Works to the Verified Complaint, without first obtaining the necessary licenses. The Court should also order that the Defendants preserve all digital and physical information and products relating to exploitation of Plaintiffs' musical compositions.

Plaintiffs have clearly shown irreparable injury, a balance of the equities in their favor, that the public will be better served by prohibiting intentional infringement of clearly recognized rights and a substantial likelihood of success on the merits. Accordingly, Plaintiffs respectfully request that this Court grant their application for a preliminary injunction.

Respectfully Submitted,

By: /s/ Paul Harrison Stacey

Paul Harrison Stacey
Law Offices of Paul Harrison Stacey , P.C.
Wyoming Bar No. 5-2615
7225 N. Spring Gulch Road
P.O. Box 4157
Jackson, WY 83001
Ph: 307-733-7333
Fax: 307-733-7360

*Illinois Office:

16

Case 3:10-cv-01160 Document 26 Filed 01/10/11 Page 16 of 17 PageID #: 275

        202 W. Willow Avenue, Suite 103
        Ph:    630-462-1949
        Fax:   630-462-9293

        Timothy L. Warnock (BPR #12844)
        Howell G. O'Rear (BPR#26509)
        Riley Warnock & Jacobson, PLC
        1906 West End Avenue
        Nashville, TN 37203

        ***Attorneys for Plaintiffs,***
        ***WARNER/CHAPPELL MUSIC, INC., et al.***

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served electronically via the Court's ECF system upon the following:

James E. Zwickel
P. O. Box 8436
Hermitage, TN 37076
cszwick@comcast.net

O. Yale Lewis, Jr.
Kara C. Herschkowitz
Hendricks & Lewis PLLC
901 Fifth Avenue, Suite 4100
Seattle, WA 98164
oyl@hllaw.com
kch@hllaw.com

this the 10th day of January, 2011.

        s/ Timothy L. Warnock_____
          Timothy L. Warnock

17

Case 3:10-cv-01160   Document 26   Filed 01/10/11   Page 17 of 17 PageID #: 276