UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WARNER/CHAPPELL MUSIC, INC., )
et al.                        )
                              )   NO. 3:10-1160
v.                            )   JUDGE CAMPBELL
                              )
BLUE MOON VENTURES and EDWARD )
YIM, individually.            )

PRELIMINARY INJUNCTION ORDER

Pending before the Court is Plaintiffs' Motion for a Preliminary Injunction (Docket No. 9). For the reasons described herein, the Motion is GRANTED.

On December 17, 2010, Plaintiffs filed an application for a temporary retraining order and preliminary injunction, asking the Court to enjoin and restrain all of the Defendants from manufacturing, distributing, or otherwise exploiting certain musical compositions owned and/or administered by Plaintiffs without first obtaining an authorizing license. (Docket No. 9). In addition, Plaintiffs' motion seeks to ensure that Defendants preserve all digital and physical information and products relating to the use and exploitations of the musical compositions. (Docket No. 9).

A temporary restraining order ("TRO") hearing was held on January 18, 2010, and Plaintiffs were granted a TRO. A preliminary injunction hearing was held on February 1, 2010, at which the Court, under Fed. R. Civ. P. 65(b)(2), extended the TRO an additional fourteen days. The TRO is set to expire at midnight on February 15, 2011.

Plaintiffs allege, both in pleadings and in oral arguments, that they are the owners and/or administrators of a number of musical compositions which are being infringed by Defendants, although the exact number of compositions at issue is not currently clear. (Docket No. 10).

Defendants argue Plaintiffs lack standing to sue for copyright infringement, and thus have no standing to ask for a preliminary injunction, as they have not established the necessary ownership of the copyrights. (Docket No. 51). Defendants argue Plaintiffs have offered no evidence to meet their burden of demonstrating ownership other than relying on (i) Exhibits A through I to the complaint, which identify Plaintiffs' percentage of control and the registration numbers of the compositions; (ii) screenshots from the U.S. Copyright Office's website of some of the compositions, and (iii) Plaintiffs' "split sheets," which Plaintiffs argue show their "ownership/control" of the relevant compositions. *Id.* Defendants argue this evidence is not sufficient to demonstrate Plaintiffs are either the legal or beneficial owners of the copyrights. *Id.*

At the preliminary injunction hearing held February 1, 2011, Plaintiffs argued they have standing to bring suit, and thus standing to ask the Court to grant a preliminary injunction against Defendants. Plaintiffs rely on four types of documents to demonstrate ownership: (1) actual copyright ownership certificates from the U.S. Copyright Office; (2) an Exclusive Songwriter and Co-Publishing Agreement, which conveys a percentage ownership to Plaintiffs of copyrights (Docket No. 44, ex. C); (3) an Exclusive Co-Publishing Agreement, which conveys a percentage ownership to Plaintiffs of copyrights (*Id*, Ex. D); and (4) an Exclusive Administration Agreement which grants Plaintiffs exclusive administration rights and appoints Plaintiffs as the attorneys-in-fact to execute necessary documents and interests in order to perfect Plaintiffs' administration rights in the subject compositions. The Exclusive Administration Agreement does not explicitly give Plaintiffs the right to bring suit as attorneys-in-fact. (*Id*, Ex. E).

The Court finds that document types (1)-(3) are demonstrative of Plaintiffs' copyright ownership rights in the corresponding compositions. However, the Exclusive Administration Agreement is not as clear and requires further analysis as set forth in this order.

## STANDARD OF REVIEW

The underlying purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm pending trial. *See, e.g. Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed. 2d 435 (1974); *The Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 226 (6th Cir. 1995)(purpose of a Rule 65 injunction is to preserve the status quo so that a reasoned resolution of a dispute may be had).

In order to be entitled to injunctive relief, a plaintiff must demonstrate the following:

1. Irreparable injury;
2. The harm threatened to plaintiff outweighs whatever damage the proposed injunction may cause to defendant;
3. The injunction would not be adverse to the public interest;
4. The plaintiff has a substantial likelihood that it will eventually prevail on the merits.

*See Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Prod.,* 134 F.3d 749, 753 (6th Cir. 1989). The same criteria apply in the context of a plaintiff's efforts to protect an intangible property right through injunctive relief. *Tree Publishing Co., Inc. v. Warner Bros. Records,* 785 F.Supp. 1272, 1274 (M.D. Tenn. 1991). These four factors are elements to be balanced and not prerequisites that must be met. *Id.* at 1274 (citing *In re: Delorean Motor Co. v. Delorean*, 755 F.2d 1223 (6th Cir. 1985)).

## ANALYSIS

In determining whether Plaintiffs should be granted a preliminary injunction, the Court, after oral arguments, held that Plaintiffs have demonstrated irreparable injury, that the harm threatened to Plaintiffs outweighs any potential damages the injunction may cause to Defendant, that the injunction would not be adverse to public interest, and that if Plaintiffs have standing to

3

bring this action, there is a substantial likelihood that they will prevail on the merits. The Court now need only determine whether Plaintiffs have standing to bring suit in this matter.

As stated above, Plaintiffs have demonstrated ownership and control over a number of compositions through outright ownership, under the Exclusive Songwriter and Co-Publishing Agreement and under the Exclusive Co-Publishing Agreement. The Court now turns to the Exclusive Administration Agreement to determine whether there is ownership, and therefore standing to bring suit, for the compositions covered by this agreement.

Under 17 U.S.C. §106, the owner of a copyright has the exclusive rights to do and to *authorize* any of six enumerated rights.[1] Section 201(d)(1) states that ownership may be transferred in whole, or in part, by any means "of conveyance or by operation of law." Transfer of copyright ownership is defined in the statute as

> an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but *not* including a *nonexclusive license*.

17 U.S.C. §101 (emphasis added). Any of the exclusive rights "including any subdivision of any of the right specified by 106, may be transferred as provided by clause (1) and owned separately.

---

[1] (1) to reproduce the copyrighted work in copies or phonorecords;
 (2) to prepare derivative works based upon the copyrighted work;
 (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
 (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
 (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
 (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission. 17 U.S.C. § 106

The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner. . . " 17 U.S.C. § 201(d)(2).

Section 501(b) establishes that the "legal or beneficial" owner of an exclusive right is entitled to "institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

In addition, when a copyright interest is transferred, it must be recorded to protect the copyright holder's right to bring an infringement suit. 17 U.S.C. § 205(d); *see* H.R. Rep. No 94-1476, at 129 (1976). This requirement ensures that prospective buyers or transferees have notice of the copyright interests owned by others. *Silvers v. Sony Pictures Entertainment*, 402 F.3d 881, 885 (9th Cir. 2005). *See also Sybersound Records v. UAV Corporation*, 517 F.3d 1137, 1146 (9th Cir. 2008); *Imperial Residential Design, Inc. v. Palms Development Group*, 70 F.3d 96 (11th Cir. 1995).

To have standing to bring suit, a party must have some ownership rights over at least part of the exclusive right for which he wishes to sue. However, the definition of "beneficial ownership" is not as cut and dry.

In *Silvers*, the Ninth Circuit held that exclusive rights may be "chopped up and owned separately, and each owner of a subdivided exclusive right may sue to enforce that portion of an exclusive right, no matter how small." *Silvers, 402 F.3d* at 887. The Court also noted that Congress' intent in listing who may sue for copyright infringement, a legal or beneficial owner, should be understood (through statutory construction) as meaning an exclusion of all others besides the legal or beneficial owner from bringing suit.

The House Report suggests, as an example, a "beneficial owner" could be "an author who had parted with legal title to the copyright in exchange for percentage royalties based on

sales or license fees." H.R. Rep. No. 94-1476 at 159. Additionally, the House Report states: "The exclusive rights accorded to a copyright owner under Section 106 are 'to do and authorize' any of the activities specified. Each . . . may be subdivided indefinitely and . . . in connection with section 201 [governing transfer of rights], each subdivision of an exclusive right may be owned and enforced separately." *Id.* at 61. Although the Copyright Act permits exclusive rights to be chopped up and owned separately, the assignment or other type of alienation permitted by 17 U.S.C. §§ 101 and 201(d)(2) must be *exclusive*.

In a karaoke case similar to this case, the Court in *Sybersound* held, "If TVT were the sole copyright owner of the nine referenced songs and had transferred an exclusive karaoke-use interest to Sybersound. . . Sybersound would have had standing as the exclusive licensee to sue the Corporation Defendants for infringement." *Sybersound Records v. UAW Corp,* 517 F.3d at 1145.

In *Nafal v. Carter*, the District Court for the Central District of California wrote, "A co-exclusive licensee is no different from a co-owner of a copyright, other than the fact that the former owns some lesser portion of the bundle of rights retained by the latter." In addition, "[t]o find that a licensee of an exclusive license lacks copyright standing because the copyright owner also granted the exclusive license to one or more other licensees would, indeed, fly in the face of case law affirming the Copyright Act's recognition of joint ownership of exclusive rights." *Nafal v. Carter*, 540 F.Supp.2d 1128 (C.D. Cal. 2007).

The Seventh Circuit explained that "[i]n an exclusive license, the copyright holder permits the licensee to use the protected material for a specific use and further promises that the

6

same permission will not be given to others." *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996).

Whether an agreement transfers rights that are exclusive or nonexclusive is governed by the substance of what was given to the licensee and not the label that the parties put on the agreement. *Althin CD Medical, Inc. v. West Suburban Kidney Center*, 874 F.Supp. at 837, 843 (N.D. Ill. 1994). "When the owner conveys a nonexclusive license to one person, the owner still has the power to do precisely the same thing for everyone else in the world. A license is exclusive not simply when one individual or entity is given the right to use a copyright, but only because the owner promises not to convey that right to anyone outside of those persons or entities who have an interest in the license." *Shaver*, at 775.

In *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982), the court held that one who owns *no exclusive right* in a copyright may not sue for infringement.

> We do not believe that the Copyright Act permits holders of rights under copyrights to choose third parties to bring suits on their behalf. When F[ed].R.Civ.P. 17(a) ordinarily permits the real party in interest to ratify a suit brought by another party, the Copyright Law is quite specific in stating that only the "owner of an exclusive right under a copyright" may bring suit.

*Id.* at 32, n.3. *See also I.A.E, Inc. V. Shaver*, 74 F.3d at 775 (". . . a person holding a nonexclusive license has no standing to sue for copyright infringement."(internal quotations omitted)).

Regarding musical compositions, although ownership rights originate with the creator, both ownership and the right to administer the copyright may be subject to an agreement, such as an administration agreement. Nimmer §30.02. In an administration agreement, the writer retains the entire copyright in the musical composition and the administrator is vested with the *sole* and

*exclusive* right to license and exploit the musical composition under copyright for the term of the agreement. Nimmer § 30.02[B].

Plaintiffs' Exclusive Administration Agreement

The agreement in dispute here is the "Exclusive Administration Agreement." (Docket No. 44-25, Ex. E). Section 3.2 of the agreement states in part: "Although it is intended that we and our foreign subsidiaries, affiliates and licensees have the fullest possible rights to (1) *administer and exploit* the [Subject Compositions], utilize your name and approved likeness in connect therewith; (ii) *grant non-exclusive* life-of-copyright licenses for uses of the [Subject Compositions]. . ." (emphasis added).

The language giving Plaintiff the right to administer and exploit the copyrights, as well as the ability to further grant non-exclusive licenses, gives them power of an exclusive licensee over at least two of the six rights in section 106, namely: the right to reproduce the copyrighted work (§106(1)) and the right to distribute copies of the work to the public by sale or other transfer of ownership (§106(2)). Further, the fact that Plaintiff is able to itself grant non-exclusive licenses weighs in favor of the fact that they are beneficial owners of the copyrights in question. The Plaintiffs that are party to the "Exclusive Administration Agreement" were transferred an *exclusive* interest from the copyright owners such that they have standing to bring suit on behalf of the copyright as the exclusive licensee.

It is not the "attorney-in-fact" language in the "Exclusive Administration Agreement" that gives Plaintiffs standing to bring suit, but rather the language in the agreement that makes Plaintiffs exclusive licensees. The parties to the "Exclusive Administration Agreement" specifically elected to omit any indication that Plaintiffs, as attorneys-in-fact, had the specific right to bring suit against infringers. Even so, the agreement grants Plaintiffs the right to collect

income, administer and exploit the compositions, and grant *non-exclusive* licenses to other parties, which is strong evidence of beneficial ownership and thus standing to bring suit.

Accordingly, the Court finds that Plaintiffs have standing to bring this action. The Motion for Preliminary Injunction (Docket No. 9) is GRANTED.

It is, therefore, ordered, pursuant to Federal Rule of Civil Procedure 65, that Defendants, their officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them are hereby restrained and enjoined, pending trial, from selling, uploading soundclips to a website, or distributing the musical compositions listed on the attached Exhibits A through H (excluding the seventeen (17) musical compositions in the attached Exhibit I, Docket No. 37, page 4)[2] without a license authorizing the exploitation. Defendants are further ordered to preserve all digital and physical information and products in their possession relating to the exploitation of the aforementioned musical compositions. Under the circumstances of this case, Plaintiff shall post a bond in the amount of $10,000.00 with the Clerk of Court.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

---

[2] Exhibit I, filed as Docket No. 33-9, is not included in the preliminary injunction because the parties have represented to the Court that the "Chartbuster" brand musical compositions are licensed or are otherwise no longer at issue.