UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE, TENNESSEE

| | | |
|---|---|---|
| WARNER/CHAPPELL MUSIC, INC., a Delaware Corporation, WARNER-TAMERLANE PUBLISHING CORP., a California Corporation, WB MUSIC CORP., a California Corporation, UNICHAPPELL MUSIC, INC., a Delaware Corporation, RIGHTSONG MUSIC, INC., a Delaware Corporation, And HOUSE OF GOLD MUSIC, INC., d/b/a "WARNER HOUSE OF MUSIC," a Delaware Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:10-1160<br><br>JUDGE SHARP<br>MAGISTRATE JUDGE KNOWLES<br><br>JURY DEMAND |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BLUE MOON VENTURES, INC., a Washington Corporation, d/b/a "LOUDKARAOKE.COM", and EDWARD YIM, Individually, EAST COAST KARAOKE & ENTERTAINMENT CORP., a New York Corporation, LEONARD MORHAIM, Individually, KTS KARAOKE, INC., a California Corporation, d/b/a "KTSKAROKE.COM" and TIMMY SUNTON, Individually, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiffs Warner/Chappell Music, Inc., Warner-Tamerlane Publishing Corp., WB Music Corp., Unichappell Music, Inc., Rightsong Music, Inc., and House of Gold Music, Inc., d/b/a "Warner House of Music" (collectively "Plaintiffs") have brought this action against Defendants Blue Moon Ventures, Inc., d/b/a "loudkaraoke.com", Edward Yim, East Coast Karaoke & Entertainment Corp., Leonard Morhaim, KTS Karaoke, Inc., d/b/a "ktskaraoke.com", and

1

Timmy Sunton (collectively "Defendants") for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* This matter is presently before the Court on Plaintiffs' *Motion for Preliminary Injunction against East Coast Karaoke & Entertainment Corp. and Leonard Morhaim* (collectively "ECK Defendants") and *Motion for Order to Show Cause and for Order of Impoundment* ("Motion to Show Cause") (Docket Nos. 98 and 109), to which ECK Defendants have filed briefs in opposition (Docket Nos. 108 and 123), and Plaintiffs filed replies (Docket Nos. 136 and 137).

Plaintiffs ask the Court for an injunction enjoining ECK Defendants from manufacturing, distributing, releasing, or otherwise exploiting any karaoke package containing a musical composition or compositions owned and/or administered by Plaintiffs without first obtaining a license authorizing the use. In addition, they request that ECK Defendants preserve all digital and physical information and products relating to exploitation of Plaintiffs' musical compositions.

Further, Plaintiffs request the entry of a Rule to Show Cause against ECK Defendants, compelling them to appear before this Court and show cause why they should not be held in contempt of this Court's Preliminary Injunction Order for their willful violations in the form of unlawful sales of the enjoined products and infringement of Plaintiffs' music copyrights. Plaintiffs also request the imposition of such penalty on ECK Defendants including, but not limited to, an award of all reasonable expenses and attorneys' fees incurred in the investigation and prosecution of their motion, as well as for an order of impoundment to be effectuated at the sole expense of ECK Defendants.

On October 13, 2011, the Court conducted a hearing on the motions. Having reviewed all the papers filed in support of, and in opposition to, Plaintiffs' motions, and having considered

the oral arguments of counsel, the Court hereby GRANTS Plaintiffs' motion for preliminary injunction and DENIES Plaintiffs' motion to show cause.

## I. PROCEDURAL HISTORY

On December 10, 2010, Plaintiffs filed a Complaint (Docket No. 1) against Blue Moon Ventures, Inc. and Edward Yim (collectively "Blue Moon Defendants"). Plaintiffs did not name ECK Defendants as a party in the initial Complaint. On December 17, 2010, Plaintiffs filed an application for a Temporary Restraining Order and Preliminary Injunction (Docket No. 9) against Blue Moon Defendants.

A temporary restraining order ("TRO") hearing was held on January 18, 2011, and Chief Judge Campbell granted Plaintiffs a TRO. A preliminary injunction hearing was held on February 1, 2011, and a Preliminary Injunction Order (Docket No. 61) was entered on February 14, 2011, enjoining Blue Moon "Defendants, their officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them" from selling or distributing the musical compositions listed on Exhibits A through H, attached to the Preliminary Injunction Order. In the course of the injunction proceedings, Blue Moon Defendants filed opposition papers disclosing the fact that East Coast Karaoke & Entertainment Corp. was one of their suppliers of the unlicensed karaoke recordings at issue.

On February 17, 2011, Plaintiffs' counsel sent a letter to ECK Defendants enclosing a copy of the Preliminary Injunction Order entered by the Court. (Docket No. 98-1). ECK Defendants were not parties to the litigation at that time. Plaintiffs requested ECK Defendants to acknowledge the Injunction and demonstrate compliance with the Order, but ECK Defendants did not respond. (Docket No. 114, Stacey Supp. Declaration, ¶ 4).

3

Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, *Instanter* (Docket No. 67) on February 24, 2011, to join ECK Defendants and the Court granted Plaintiffs' motion on April 26, 2011 (Docket No. 79). Upon the appearance of counsel on behalf of ECK Defendants in this litigation, Plaintiffs requested counsel to enter into an Agreed Preliminary Injunction, but counsel denied Plaintiffs' request (Docket No. 98-2). As a result, Plaintiffs filed the pending motions.

## II. ANALYSIS

### A. Standing

ECK Defendants argue that Plaintiffs lack standing to sue for copyright infringement, and thus have no standing to ask for a preliminary injunction, as they have not established the necessary ownership of the copyrights. (Docket No. 51). ECK Defendants contend Plaintiffs' evidence was insufficient to demonstrate Plaintiffs are either the legal or beneficial owners of the copyrights. *Id.* However, as stated in Chief Judge Campbell's Preliminary Injunction Order, the Court found that Plaintiffs have standing to bring this action. (Docket No. 61 at 9).

The undersigned is not writing on a *tabula rasa*, and proper deference must be given to the decision rendered by Chief Judge Campbell since "the law of the case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern,'" unless exceptional circumstances exist, such as where the earlier decision was plainly erroneous. *Westside Mothers v. Olszewski*, 454 F.3d 532, 548 (6th Cir. 2006). This salutary rule takes on an added layer where a case is transferred to a successor judge because while "a successor judge has the same discretion to reconsider an order as would the first judge," the successor judge "should not overrule the earlier judge's order or judgment merely because the later judge might have decided matters differently." *In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009). "The

4

question of what circumstances justify revisiting a ruling previously made by a judge of coordinate jurisdiction is case specific," but guided by the following principles:

> First, reconsideration is proper if the initial ruling was made on an inadequate record or was designed to be preliminary or tentative. . . . Second, reconsideration may be warranted if there has been a material change in controlling law. . . . Third, reconsideration may be undertaken if newly discovered evidence bears on the question. . . . Lastly, reconsideration may be appropriate to avoid manifest injustice. . . . . In that regard, however, neither doubt about the correctness of a predecessor judge's rulings nor a belief that the litigant may be able to make a more convincing argument the second time around will suffice to justify reconsideration. . . . For this purpose, there is a meaningful difference between an arguably erroneous ruling (which does not justify revisitation by a co-equal successor judge) and an unreasonable ruling that paves the way for a manifestly unjust result.

*Ellis v. United States*, 313 F.3d 636, 647 (1st Cir. 2002) (internal citations collecting numerous authorities from various circuits omitted).

Chief Judge Campbell's ruling on February 14, 2011, was not preliminary or tentative, and was based upon uncontested facts as they related to the question of standing. There has been no showing of any change in controlling law, or the existence of any new evidence which bears upon the standing issue. Plaintiffs have established the necessary ownership of the copyrights and as such, they have standing to sue for copyright infringement, and thus have standing to ask for a preliminary injunction.

**B.      Contempt**

In the Motion to Show Cause, Plaintiffs contend ECK Defendants were bound by the restraints of this Court's prior Preliminary Injunction Order, including the prohibition against further sales of the unlicensed "*Nutech*", "*Panorama*" and "*Top Hits Monthly*" discs. Plaintiffs further contend that having notice of the entry of the Injunction Order, ECK Defendants willfully disobeyed the Order, thereby violating the Order by continuing to advertise, distribute, and offer for sale the "*Nutech*", "*Panorama*", and "*Top Hits Monthly*" brands. (Docket No. 109 at 3-4).

5

Plaintiffs argue that ECK Defendants are subject to the prior Preliminary Injunction because it enjoined, "all persons in active concert or participation with [Blue Moon Defendants]." (Docket No. 110 at 3). ECK Defendants assert that they are not in "active concert or participation" with Blue Moon Defendants and "currently have no relationship whatsoever" with them. (Docket No. 123 at 2).

"A decision on a motion for contempt lies within the sound discretion of the court." *General Conf. Corp. v. McGill*, 2009 U.S. Dist. LEXIS 122155, *5-7 (W.D. Tenn. Dec. 14, 2009) (citing *Elec. Workers Pension Trust Fund of Local Union # 58 v. Gary's Elec. Serv.*, 340 F.3d 373, 378 (6th Cir. 2003)). However, to establish a *prima facie* case of contempt, the movant must produce clear and convincing evidence to show a violation of a definite and specific order of which that party had knowledge, and which directed that party to perform or refrain from performing a particular act or acts. *Id.* Federal Rule of Civil Procedure 65(c) provides the following:

> Every order granting an injunction . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Acknowledging that a court's power to enjoin is limited to the conduct of a party, courts must look at the relationship between the party enjoined and the nonparty to determine whether an injunction may be applied to the nonparty. *Paramount Pictures Corp. v. Carol Publ'g Group*, 25 F. Supp. 2d 372, 374-5 (S.D.N.Y. 1998). In *Microsystems Software, Inc. v. Scandinavia Online AB*, the court held that:

> In order to hold a nonparty in contempt for violating an injunction, a court first must determine that [it] was in active concert or participation with the party specifically enjoined…[t]his means, of course, that the nonparty must be legally identified with that defendant, or, at least, deemed to have aided and abetted that defendant in the enjoined conduct…[t]he existence of that linkage makes it fair to bind the nonparty, even if [it] has

not had a separate opportunity to contest the original injunction, because [its] close alliance with the enjoined defendant adequately assures that [its] interests were sufficiently represented.

*Microsystems Software, Inc. v. Scandinavia Online AB,* 226 F.3d 35, 43 (1st Cir. 2000). Thus, "[a] nonparty in active concert cannot violate an injunction unless the enjoined party is also in contempt." *Paramount Pictures Corp.*, 25 F. Supp. 2d at 374-5 (citing *United Pharm. Corp. v. United States*, 306 F.2d 515, 516-17 (1st Cir. 1962)). Furthermore, an injunction does not reach back in time to actions taken prior to the time it was issued. *Id.* (citing *United Pharm. Corp.*, 306 F.2d at 517 ("past contractual relationship is not controlling" on question of whether nonparty violated injunction)).

ECK Defendants' actions subsequent to the entry of the Order did not constitute aiding and abetting Blue Moon Defendants in any enjoined conduct. Likewise, ECK Defendants' relationship with Blue Moon Defendants does not support an allegation that they were legally identified with Blue Moon Defendants. Further, Plaintiffs have not filed a motion for issuance of show cause against Blue Moon Defendants. Under the circumstances of this case, Plaintiffs failed to demonstrate that ECK Defendants were either in active concert or participation with Blue Moon Defendants. Therefore, ECK Defendants should not be held in contempt of this Court's prior Preliminary Injunction Order and no order to Show Cause shall issue.

### C. Legal Standard for Preliminary Injunction

"A preliminary injunction is an extraordinary remedy designed to preserve the relative positions of the parties until a trial on the merits can be held." *Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009). The Court must assess four factors to determine if Plaintiffs are entitled to a preliminary injunction: "(1) that [they are] likely to succeed on the

merits, (2) that [they are] likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [their] favor, and (4) that an injunction is in the public interest. *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,* No. 10-35987, 2011 WL 3659315, at *4 (9th Cir. Aug. 22, 2011) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)). The Court will address each of these factors, which are interrelated considerations that must be balanced together. *Northeast Ohio Coalition for Homeless and Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer. *Id.* Furthermore, the Copyright Act states that "courts 'may' grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'" 17 U.S.C. § 502(a).

### i. *Likelihood of Success on the Merits*

At this juncture, the Court is not deciding the ultimate merits of Plaintiffs' case against Defendants, but rather the Court is called upon to determine whether Plaintiffs have shown a likelihood that they will ultimately succeed on the merits. "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Furthermore, direct copyright infringement occurs when anyone "violates any of the exclusive rights of the copyright owner." 17 U.S.C. § 501(a). Thus, at the end of the day, Plaintiffs must establish the two elements of copyright infringement: "(1) ownership of a valid copyright; and (2) copying constituent elements of the work that are original without authorization." *Bridgeport Music, Inc. v. VM Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007) (quoting *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004)).

8

Plaintiffs argue that because the Court determined as a matter of law that Plaintiffs have standing to bring this action, they have met the *prima facie* element of ownership. (Docket No. 61 at 9). Plaintiffs contend that they have also met the *prima facie* element of infringement pursuant to 17 U.S.C. § 106 because the owner of a musical composition copyright holds the exclusive right to control the manufacture and distribution of performances of the copyrighted material and the reproduction and distribution of the lyrics. Furthermore, Plaintiffs state that those rights have not been licensed to ECK Defendants. (Docket No. 99 at 11). ECK Defendants claim, nevertheless, that Plaintiffs have not demonstrated actual or beneficial ownership, nor infringement of each of the works at issue. (Docket No. 108 at 12). In consideration that the requisite degree of the likelihood of success may depend on the strength of the remaining three factors, Plaintiffs have indeed demonstrated a sufficient likelihood of success on the merits to support the imposition of a preliminary injunction.

### *ii. Irreparable Harm*

A plaintiff seeking injunctive relief must demonstrate that irreparable harm is likely in the absence of an injunction, not merely speculative. *Winter*, 129 S.Ct. at 376. A plaintiff seeking injunctive relief must do more than establish the "'possibility' of irreparable harm." *Id*. at 375. Citing to *Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259 (6th Cir. 1988) for support, Plaintiffs contend that there is a rebuttable presumption that they will suffer irreparable harm as long as they show a likelihood of success on the merits. (Docket No. 99 at 7). ECK Defendants, however, contend that Plaintiffs failed to cite the subsequent Supreme Court's opinion in *eBay, Inc. v. MercExchange*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), which many courts have held removed the rebuttable presumption of irreparable harm. (Docket No. 108 at 4-5). Plaintiffs reply that they have "the right to the control and use of their copyrighted materials

9

and irreparable harm inescapably flows from the ECK Defendants' denial of that right." (Docket No. 136 at 8); *See Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 968 (8th Cir. 2005). The Supreme Court was very clear that even when infringement had been proven, a plaintiff may not be granted injunctive relief until he satisfies the four-factor test, which includes demonstrating irreparable injury. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006). The Second Circuit clarified the standard for the element of irreparable harm by stating that:

> The court must actually consider the injury the plaintiff will suffer if [it] loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'

*Salinger v. Colting*, 607 F.3d 68, 80 (2nd Cir. 2010). "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Id.* at 81. Irreparable harm "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement. *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991). Both appear present here.

Additionally, Plaintiffs' loss of control over their property and the consequent inability to control the exploitation of their works cannot be adequately addressed by purely monetary damages. Accordingly, Plaintiffs have met their burden and the Court concludes that Plaintiffs will likely suffer irreparable harm if the preliminary injunction is not issued.

### iii. Balance of Equities and Public Interest

In determining whether to allow injunctive relief, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 129 S.Ct. at 376 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)). Plaintiffs assert that the balance of harms weighs

in Plaintiffs' favor because a preliminary injunction would bar future violations of the law and the risk that ECK Defendants may destroy unlicensed discs belonging to Plaintiffs. (Docket No. 108 at 9). Moreover, Plaintiffs state that ECK Defendants "can suffer no harm from being enjoined from exploiting Plaintiffs' intellectual property", because ECK Defendants have no right to reproduce or distribute unlicensed karaoke packages containing Plaintiffs' owned or controlled compositions. Further, Plaintiffs assert that the public interest would be served by entering a preliminary injunction because in keeping with the underlying purpose of a preliminary injunction, the issuance of a preliminary injunction would not only vindicate the rights of the lawful owners of the intellectual property at issue, but it would also aid in protecting the legitimacy of the market for karaoke products. *Tree Publishing Co., Inc. v Warner Bros. Records*, 785 F.Supp. 1272, 1274 (M.D. Tenn. 1991); (Docket No. 99 at 10). ECK Defendants, nevertheless, claim Plaintiffs' assertion of continued sales is "pure speculation" and that Plaintiffs have not presented any evidence that ECK Defendants destroyed any physical documents or electronically stored information. (Docket No. 108 at 10). The balance of hardships tips in Plaintiffs' favor; and likewise, the public interest weighs in favor of granting the preliminary injunction in this matter, as the public interest would not be disserved by the issuance of this preliminary injunction.

In balancing the four factors to be considered when determining whether to grant a motion for a preliminary injunction, this Court finds that Plaintiffs were successful in carrying the burden of demonstrating their entitlement to this extraordinary remedy.

### III. CONCLUSION

For all of the reasons stated herein, it is hereby ORDERED that Plaintiffs' *Motion for Preliminary Injunction against East Coast Karaoke & Entertainment Corp. and Leonard*

*Morhaim* is hereby GRANTED. Plaintiffs' *Motion for Order to Show Cause and for Order of Impoundment* is hereby DENIED.

                                              */s/ Kevin H. Sharp*
                                          KEVIN H. SHARP
                                          UNITED STATES DISTRICT JUDGE